IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LARRY ALLEN LYMAN                                                                             PLAINTIFF

v.                    Civil No. 5:24-cv-05192-TLB-CDC

SERGEANT BRITTNEY WRIGHT, Benton
County Detention Center (BCDC); LIEUTENANT
TYLER ROSS, Grievance Officer, BCDC; JOHN
DOE #1 & #2, Booking Sergeants, BCDC; JOHN
DOE, Transport Deputy, BCDC; JOHN DOE, Control
Deputy, BCDC; and DEPUTY OGDEN, BCDC                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Larry A. Lyman ("Lyman"), a former an inmate of the Benton County Detention Center (BCDC), filed this civil rights action under 42 U.S.C. § 1983. Lyman proceeds *pro se* and *in forma pauperis* ("IFP").

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court for preservice screening of the Amended Complaint (ECF No. 9) under 28 U.S.C. § 1915A. Pursuant to § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

### I.   BACKGROUND

According to the allegations of Claim One of the Amended Complaint, on June 18, 2024, when Lyman was transported to the BCDC, the John Doe transport deputy violated his constitutional rights by refusing to return Lyman's personal property, legal mail, and paperwork to him. (ECF No. 9 at 5). The John Doe transport deputy advised Lyman that the BCDC had

changed the policy and whether Lyman could retain his property would be up to the booking sergeant. *Id.*

When he was being booked, Lyman asked the John Doe booking sergeant #1 to return his legal materials. (ECF No. 9 at 6). Lyman was told that per facility policy the materials would be placed in his property. *Id.* The John Doe booking sergeant advised Lyman he would need to get his attorney to retrieve the materials by following the property release process. *Id.* The legal materials included a completed § 1983 complaint form and Lyman's notes regarding events. *Id.*

In Claim Two, Lyman alleges that on April 2, 2024, the John Doe control deputy violated his constitutional rights "by refusing to follow facility policy after I notified him of my compliance to the release of property rules contained in the Inmate handbook and the forced acknowledgement notice which also violates my constitutional rights." (ECF No. 9 at 7). On April 25, 2024, Lyman asserts Defendant Ogden obtained illegal access to Lyman's personal property and then disposed of the property in violation of facility policy and procedures. *Id.* Lyman further alleges that the John Doe booking sergeant #2 "condoned Ogden's actions by not stopping him before he exited through[] the sally port set of doors." *Id.*

In Claim Three, Lyman alleges that between the dates July 27, 2024, and August 5, 2024, Defendant Wright interfered with his legal process by intercepting the "asset verification document which is required for filing a 1983 complaint." (ECF No. 9 at 9). Defendant Wright "then, without authority, by her own hand in violation of facility policy completed, signed and dated it, in her attempt to conceal her actions which violate my rights." *Id.* Lyman next alleges that Defendants Ross and Wright violated his constitutional rights "by, in agreement, chang[ing] a documents grievance [t]itle by use of built in functions of the kiosk, to Topic: Transport Division, thereby altering a chain of evidence of process." *Id.* Lyman maintains the conduct of

Defendants Ross and Wright deprived him of his constitutional rights. *Id.*

As relief, Lyman seeks compensatory and punitive damages. (ECF No. 9 at 10). In his prayer for relief, Lyman asks for punitive damages for each day he was deprived of the Bible. *Id.* However, no such claim is asserted in this case.

## II.     APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.     DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) each defendant acted under color of state law, and (2) that he or she violated a right secured by the constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

In Claims One and Two, Lyman asserts two potential claims: deprivation of property; and denial of access to the courts. In Claim Three, Lyman asserts two potential claims: denial of access to the courts; and failure to adhere to the grievance procedure.

### A. Deprivation of Property

The Due Process Clause of the Fourteenth Amendment provides that "'[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law.'" *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011) (*quoting* U.S. Const. Amend. XIV, § 1). "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976) (internal quotation marks omitted). "In some circumstances . . . the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). Specifically, when the deprivation is the result of a random and unauthorized act and not pursuant to some established governmental procedure, the Court has held that "adequate postdeprivation remedies satisfy the requirements of due process." *Walters*, 660 F.3d at 312 (citations omitted). "The loss of property . . . is in almost all cases beyond the control of the [government], in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.*

In Claim One the John Doe transport deputy and the John Doe booking sergeant merely had Lyman's property in storage in accordance with the facilities policy. Lyman had only to comply with the release procedures to obtain property. No plausible deprivation of property claim is stated in Claim One.

Similarly, no plausible deprivation of property claim is stated in Claim Two against the John Doe control deputy who failed to release the documents in accordance with the WCDC's policy. A failure to adhere to a jail policy does not amount to a constitutional deprivation. *See e.g., Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (no constitutionally protected liberty right to have jail officials follow jail policies). With respect to Defendant Ogden who is alleged to have destroyed Lyman's personal property, no plausible claim is stated because Lyman has adequate post-deprivation remedies. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available). Arkansas law provides such a post-deprivation remedy through an action for conversion. *See e.g., Elliott v. Hurst*, 817 S.W.2d 877, 880 (Ark. 1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). No cognizable claim for deprivation of property is stated.

### B. Access to the Courts

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817 (1997)). Nevertheless, the Supreme Court "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. Instead, prison officials must provide "some means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011) (internal quotations and citations omitted). These means may include but are not limited

to: prison libraries; jailhouse lawyers; private lawyers on contract with the prison; or some combination of these and other methods. *Id.*

An Inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury because of the prison officials' conduct. *See Lewis*, 518 U.S. at 351-2; *see also Farver v. Vilches*, 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (internal quotation and citations omitted). Here, Lyman has not alleged any actual injury. He has failed to state a plausible denial of access to the courts claim.

### C. Grievance Procedure

The Eighth Circuit has made it clear prisoners do not have a constitutional right to a prison grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (no claim when "various defendants denied his grievances or otherwise refused to help him"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (no claim when defendants failed to timely and properly respond to a grievance). Thus, Defendants Ross and Wright's changing of the topic on a grievance to the transport division standing alone, is not actionable under § 1983.[1] *Id.* As there is no

---

[1] However, in the context of exhaustion of administrative remedies, Lyman would be free to argue this or similar conduct made the grievance procedure unavailable to him.

constitutional right to either a grievance procedure or a grievance response, Lyman failed to state a plausible claim.

### IV.   CONCLUSION

For the reasons stated above, I recommend:

(1)  the case be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2) Plaintiff is warned that, in the future, this dismissal may be counted as a strike for purposes of 28 U.S.C. § 1915(g) and thus, the **Clerk** is directed to place a § 1915(g) strike flag on the case for future judicial consideration; and

(3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this dismissal would not be taken in good faith.

**Status of the Referral**:   The referral terminates upon the filing of this Report and Recommendation.

The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.

**RECOMMENDED** this 19th day of November 2024.

*s/* *Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE